MERRIMAN et al. v. CHICAGO & E. I. R. CO. et al.

(Circuit Court of Appeals, Seventh Circuit. March 20, 1895.)

1. APPEAL—REHEARING.
    It is too late to present a question for the first time on a petition for rehearing.
2. CREDITORS' BILL—LIS PENDENS—LIEN.
    Plaintiffs, by a creditors' bill, acquired a lien on whatever equity of redemption their debtor, D., had in a railroad, sold to E. under foreclosure. Thereafter, in a suit to which plaintiffs were not parties, a decree was entered waiving all rights of D. to claim an equity of redemption, in consideration of the issue of certain bonds by E. to officers of D. *Held*, that the issue of the bonds to such officers did not make D. chargeable to plaintiffs for the value thereof, on the theory that the bonds were thus substituted for the equity of redemption.
3. LIENS—RIGHTS OF JUNIOR LIENHOLDER.
    One having a lien on an equity of redemption cannot complain of the disposition of the money paid therefor, as long as the liens prior to his exceeded the value of the equity of redemption.

On rehearing. For principal opinion, see 12 C. C. A. 275, 64 Fed. 535.

BAKER, District Judge. Counsel in their brief in support of the petition for rehearing say:

"In the opening statement of the court it is said that the appellants concede that 'unless the original bill was a creditors' bill, which created a lien on $500,000 of bonds of the Eastern Illinois Company, which it was about to issue to certain officers of the Danville Company, and which it did issue before the filing of the amended and supplemental bill,' the cause was properly dismissed as to the Eastern Illinois Company. This statement is, we think, somewhat broader than that made in our argument, but we are not prepared to say that it is not warranted by it. The view we now present is in conflict with the course of our original argument, in that we now distinctly claim that, when the original bill was filed, the lien was created upon the value of the equity of redemption, while we formerly stated it as a lien upon these bonds which the Eastern Illinois Company had agreed to furnish as a substitute for that equity of redemption."

The counsel for the appellants, therefore, in effect concede that the question which they formerly argued and submitted was correctly decided; and they now ask a rehearing on grounds which are in conflict with the course of their original argument. Aban-

doning as indefensible the grounds on which they sought a reversal of the decree in the first instance, they now ask the court to grant them a rehearing, so that they may for the first time seek a reversal on grounds in conflict with their former contention. When the court has correctly decided the questions upon which its judgment has been invoked by the appellants, they cannot, as a matter of right, require the court to consider any other questions upon a petition for a rehearing. If such a practice were permitted, the case might be presented in parcels, and the litigation would, in this manner, be needlessly protracted. And this principle applies with peculiar force where, as in the present case, counsel ask a rehearing to enable them to present the case upon a theory in conflict with the course of their original argument. Fuller v. Little, 61 Ill. 22; Yater v. Mullen, 24 Ind. 277; Brooks v. Harris, 42 Ind. 177, 180. It is, by the well-settled principles of the law, too late to present a question for the first time on a petition for a rehearing, and, in consenting to consider that question in the present instance, we do not mean to make an innovation which shall be regarded as a precedent in future cases.

The present contention of the appellants is that the original bill created a lien upon the equity of redemption of the Danville Company in the railroad and property in the possession of the Eastern Illinois Company, and that the bonds became, upon their issuance, a substitute for such equity of redemption. Counsel state their claim as follows:

"We view the case presented on the record as establishing beyond dispute that the Eastern Illinois Company, after having by collusion procured an apparent release of the Danville Company's equity of redemption in this property, and after an equitable lien had been created on that equity by the original bill herein, obtained from the debtor an effective release of this equity, and thereby substituted its $500,000 of bonds for the value of that equity, and converted them into an asset of the Danville Company."

Shortly stated, the claim now is that the Eastern Illinois Company is chargeable with the value of the $500,000 of bonds issued by it to the officers of the Danville Company, on the ground that by issuing them they were converted into an asset of that company.

The Eastern Illinois Company had become by mesne conveyances the owner of the railroad and property of the Danville Company under a judicial sale made pursuant to a decree of foreclosure and an order of sale. The sale so made was confirmed by a decree of the court. On an appeal taken from such decree to the supreme court of the United States, such proceedings were there had as resulted in a reversal of that decree. Thereafter, on July 7, 1882, Fosdick and Fish filed in the United States circuit court for the Northern district of Illinois an amended and supplemental bill against the Danville Company, the Eastern Illinois Company, and others, for the foreclosure of the mortgage or trust deed executed by the Danville Company, and for other relief. The Eastern Illinois Company filed in said cause a cross bill, setting up a title to the mortgaged premises and property under a judicial sale made by virtue of the decree in the suit on the original bill.

The appellants herein were not parties to the above-mentioned proceedings. They made an application for leave to intervene and become parties to that suit, but their application was denied by the court. The parties of record to the above-mentioned proceedings settled the litigation between themselves, which resulted in a release of errors, and a decree confirming the title of the Eastern Illinois Company to the railroad and property of the Danville Company acquired under the above-mentioned decree and sale, upon the issue and delivery by it to certain officers of the Danville Company of the $500,000 of bonds in question. If the appellants' original bill created a lien upon anything, it was a lien upon the equity of redemption of the Danville Company. The contract for the settlement of the suit of Fosdick and Fish against the Danville Company, the Eastern Illinois Company, and others in no way affected the rights of the appellants, if they had acquired any by their original bill, because they were not parties to that contract, nor to the suit thereby settled. As to the appellants it was res inter alios acta. Counsel in argument concede this. They say:

"They [the appellants] could only seek to reach the equity of redemption, and could not reach the bonds. The Danville Company, their debtor, was not a party to the Eastern Illinois Company's contract. It had no right or equity in the bonds, and, as a matter of fact, could not have complied with the terms of the contract made by Judson, because it did not own its own stock which was a part of the nominal consideration for that contract; the complainants, as its creditors, could not have enforced a specific performance of that contract. or acquired any right to the bonds. They could not even control the Danville Company to make it confirm the decree."

It is insisted, however, that by the contract and decree the bonds were substituted for the equity of redemption. If such substitution was thereby effected, it was contrary to the understanding and intention of the parties. There was no agreement to buy the equity of redemption of the Danville Company. The Eastern Illinois Company at all times denied that the Danville Company had any equity of redemption. It agreed to the contract of settlement, and to the issuance of its bonds, to procure a decree whose effect was to deny that the Danville Company had any equity of redemption in the railroad and property acquired by it at the judicial sale. So far as the appellants are concerned, the contract of settlement and the decree did not affect their rights. If they ever acquired any enforceable lien on the equity of redemption, it remained in all its integrity after, the same as before, the settlement was made and the decree was entered. No legal or equitable right of theirs entered into or formed any part of the consideration of the bonds in question. Besides, the bonds never had any legal inception while they remained unissued in the hands of the Eastern Illinois Company. It is now conceded that the appellants did not and could not acquire any lien upon the bonds so long as they remained unissued. They could claim no right, legal or equitable, to the bonds until they had passed, as the valid obligations of the Eastern Illinois Company, into the possession of some other party. Having no lien upon or equity in the unissued bonds, the appellants

could not, in a legal sense, be injured by their issuance, whether the parties who received them took them for or without consideration. If any right to the bonds or their proceeds ever accrued to the appellants, it did not accrue until the bonds had become vitalized by their issuance and delivery to the parties named in the contract. The parties to whom these bonds were issued, and not the Eastern Illinois Company, must be pursued as trustees holding them in trust for the use of the appellants. These parties have acquired, as against the Eastern Illinois Company, a valid and indefeasible title to the bonds. That company committed no legal or actionable wrong against the appellants by the issue and delivery of the bonds. It cannot be made to account to the appellants for the bonds or their proceeds, because it has no beneficial interest in them. It is simply the maker of the bonds, and a debtor to the holders of them. If any right of action against it arose in favor of the appellants from the contract and the decree, it arose from its having acquired the equity of redemption of the Danville Company, and not from its issuing the bonds in question. If the Eastern Illinois Company acquired by the contract and the decree any equity of redemption not theretofore possessed by it, the appellants were not injured thereby. Whatever equity of redemption the Danville Company had in the railroad and property of the Eastern Illinois Company, so far as the appellants are concerned, remained liable to be subjected to the appellants' claims. In no aspect of the case are they entitled to a decree compelling the Eastern Illinois Company to account to them for the bonds or their proceeds. These views are decisive of the new ground of contention presented by the petition for a rehearing. Although not required to do so, we add that the appellants do not claim the right to a decree subjecting the alleged equity of redemption of the Danville Company to sale in the hands of the Eastern Illinois Company, and, on the case made by the original bill and the proofs, we do not think the court below committed any error in dismissing the bill, for want of equity, as to the Eastern Illinois Company. We cannot perceive that the settlement and the decree in question gave the appellants any new or additional rights beyond those acquired at the time suit was brought on their original bill. On the rights thus acquired they have failed to make a case.

WOODS, Circuit Judge (concurring). If it be conceded, as now asserted, "that the original bill was a creditors' bill seeking satisfaction of the complainants' judgments out of the assets and property of the Danville Company, and particularly out of the value of the equity of redemption belonging to that company in the property which had passed into the hands of the Eastern Illinois Company," it does not follow that the lien thereby created upon the alleged equity of redemption attached to the bonds in question, as a substitute for the equity, when they were afterwards issued. The bonds were not in fact intended by the parties to the transaction to be such substitute. They were not given in whole or in part in consideration of the surrender of that equity, though it is of

course true that by giving the release of errors, which was only a part of the consideration for the issue of the bonds, the Danville Company waived all right of its own to assert such equity. But if the equity existed and the appellants by bringing their bill acquired a lien upon it, that lien was not affected by the execution of the bonds, and their proper course, as against the Eastern Illinois Company, was to prosecute their suit under the original bill to final decree, subjecting the equity, if established, to sale for the satisfaction of their demands. Upon any possible theory, the existence of that equity is essential to their case. Moreover, if the equity and the lien thereon asserted under the original bill be admitted, and in addition it be conceded that under the amended and supplemental bills the bonds, as a substitute for the equity, came under the same lien, it does not follow, in my opinion, that the appellants were harmed by the decree from which they have appealed. By asserting such substitution they necessarily abandoned all attack upon the title acquired by the Eastern Illinois Company and acknowledged that the bonds represented the full value of the equity which their original bill was designed to reach. This is admitted in the brief in support of the petition for a rehearing, where it is said:

"The bill does not attack the method which it charged had been adopted between the Eastern Illinois Company and the officers and stockholders of the Danville Company for releasing the equity of the Danville Company in the property to the Eastern Illinois Company. It does not seek to prevent that scheme of transferring the right being carried into effect, and it did not seek to have the decree set aside. It made no objection to the price which had been fixed as the value of the equity; and it could have made no objection to that price, because it was sufficient to satisfy complainants' judgments. The attack of the bill is solely on the proposed payment of the value of that equity, or of the sum which should be substituted therefor, to the Danville Company, or to those persons who intended to use it for their individual benefit, if the scheme should be carried into effect."

On that basis the question plainly is whether the appellants, as judgment creditors of the Danville Company, were entitled to have the bonds applied to the payment of their demands. The Danville road had been sold to the vendors of the Eastern Illinois Company, upon a decree of foreclosure of first mortgage bonds of which Fosdick and Fish were trustees, for $1,450,000, leaving the decree unsatisfied to the amount of $6,325,712.85. After the sale, and after the purchase by the Eastern Illinois Company, the decree had been reversed by the supreme court. If there was a right of redemption from the sale it was because of that reversal, and if that was the effect of the reversal, then the mortgages which had been merged in the decree were thereby reinstated and were again a lien upon the property for the entire amount thereof, as if there had been no foreclosure and sale. Besides, there was the second mortgage, of which Elwell was the trustee, for more than $600,000, to which the lien of the appellants was subordinate. Without payment of prior liens in full the appellants could have no interest in the equity of redemption, or in the bonds considered as a substitute therefor; and if the holders of the prior liens permitted

their officers and agents, or strangers, to appropriate the equity, or its proceeds or substitute, it is no cause for complaint by the appellants, unless the values so disposed of exceeded the prior liens and included something which justly belonged to them. That has not been shown, and the contrary is in effect admitted by the theory of the petition for a rehearing.

The petition is denied.